IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DORIS Z. HERNANDEZ                                   Case No.

       Plaintiff

v.                                                                JURY TRIAL DEMANDED

NCC BUSINESS SERVICES, INC.
a Florida Corporation

       Defendant.
_____/

COMPLAINT FOR UNLAWFUL DEBT COLLECTION PRACTICES
AND DEMAND FOR JURY TRIAL

INTRODUCTION

1. This is an action for damages brought by an individual consumer for Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq* (hereinafter "FDCPA"), and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55, *et seq* (hereinafter "FCCPA"); these laws prevent debt collectors and "persons" from, *inter alia*, engaging in abusive, deceptive, harassing, and unfair collection practices.

JURISDICTION AND VENUE

2. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), 28 U.S.C. §§ 1331, 1337, and 1367.

3. Venue lies in this District pursuant to 28 U.S.C. § 1391(d), as a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

PARTIES

4. Plaintiff, DORIS Z. HERNANDEZ (hereinafter "Plaintiff"), is a natural person who resides in the county of Hillsborough, state of Florida, and is a "consumer" as that term is

defined by 15 U.S.C. § 1692a(3) and Fla. Stat. § 559.55(2), and is also a person with standing to bring a claim under the FDCPA by virtue of being directly affected by a violation of the Act.

5. Defendant, NCC BUSINESS SERVICES, INC., (hereinafter "NCC" or "Defendant"), is a for-profit entity incorporated under the laws of Florida, with its principal place of business located at 9428 Baymeadows Road, Suite 200, Jacksonville, Florida 32256; Defendant is a "debt collector," as that term is defined by 15 U.S.C. § 1692a(6) and Fla. Stat. § 559.55(6), as, in the regular course of its business, it regularly collects or attempts to collect debts owed or due or asserted to be owed or due another.

## FACTUAL ALLEGATIONS

-The Payment Arrangement Between the Parties-

6. In or around January 2010 Plaintiff entered into a voluntary payment plan with Defendant in an attempt to pay a debt which was originally owed to Paddock Club Apartments and was assigned to Defendant for collection after falling into a defaulted status.

7. This debt was originally incurred for Plaintiff's personal, family, or household purposes.

8. Plaintiff's default originally occurred due to medical issues which prevented Plaintiff from making her monthly rental payments.

9. The original payment plan agreed to by the parties was for Plaintiff to pay $335.00 per month to Defendant.

10. At the time Plaintiff agreed to the payment plan, she was receiving social security disability benefits, as well as long-term disability income.

11. It is alleged that Plaintiff's "willingness" to enter into this payment plan was induced by Defendant, based on the statements and representations of Defendant's agents who

        advised Plaintiff that Defendant would garnish her disability income to satisfy the debt if she did not pay.

12. In or around June 2010 Plaintiff ceased receiving long-term disability income and was left with only her social security disability income.

13. As a result, Plaintiff contacted Defendant and explained her situation and the parties agreed to a new payment amount of $170.00 per month, plus a $15.00 per month "service fee," for a total monthly amount of $185.00.

14. However, due to Plaintiff's current residence increasing Plaintiff's charges she was unable to continue with the $185.00 per month payment plan.

15. On or about July 6, 2010 Plaintiff contacted Defendant to explain her situation and she spoke with a female representative by the name of "Chenelle."

16. Plaintiff explained her situation to Chenelle, asking Defendant to suspend the current payment plan until she had the financial means to pay Defendant.

17. When told that Defendant would not cancel the agreement, Plaintiff requested that Defendant accept a monthly payment plan of $25.00 per month in the meantime, to show that Plaintiff was making payments.

18. Chenelle refused to accommodate Plaintiff's request, rudely stating to Plaintiff, "You put yourself into this debt."

19. Also on or about July 6, 2010 Plaintiff spoke with another representative of Defendant's, Supervisor Holmes.

20. Plaintiff asked Holmes to reduce the monthly payment amount stating that she did not have the funds for the $185.00 payment which was scheduled to be auto-debited, due to Plaintiff's prior authorization.

21. Holmes would not agree to accept $25.00 per month, so Plaintiff attempted to withdraw her prior authorization for all future auto-debit payments, but was told by Holmes that she [Holmes] "could do whatever [she wants] and that [she] will place this account as a housing debt."

22. Despite Plaintiff's specific request to cancel the auto-debit payment of $185.00, and the allowance of a sufficient amount of time for the processing of Plaintiff's request to cancel the auto-debit payment, Defendant processed the next payment anyways, causing Plaintiff to suffer damages as a result of Defendant's unauthorized debiting.

23. Due to how the auto-debit was set up with her bank, Plaintiff was told that Defendant could continue to process payments "anytime" and "as many times as [Defendant] wants."

24. As a result, Plaintiff was left with no other option other than to close her old checking account and reopen a new account.

-Common Factual Allegations-

25. It is alleged that Defendant's actions were performed with the intent to coerce Plaintiff into paying a defaulted consumer debt.

26. All acts or omissions of the employees/agents of Defendant were performed within the scope of their respective employment/agency, thus subjecting Defendant to vicarious liability for these acts under the doctrine of *respondeat superior*.

27. The false statements of Defendant's representatives regarding Defendant's right to garnish Plaintiff's social security disability benefits were deceptive and therefore violative of the FDCPA and FCCPA.

28. The representative's statement that Plaintiff "put [herself] into this debt" was intended to disgrace and harass Plaintiff and is therefore violative of the FDCPA and FCCPA.

29. Defendant's collection of the $15.00 "service fee" was not expressly authorized by the original agreement, and thus, was unfair and a violation of the FDCPA and FCCPA.

30. Defendant's processing of the auto-debit payment, following Plaintiff's revocation of her authorization was unfair, and as a result was violative of the FDCPA and FCCPA.

31. As a result of Defendant's acts or omissions Plaintiff suffered from mental anguish in the forms of stress, worry, and fear, and damages as a result of the payment(s) being processed after Plaintiff had revoked her authorization.

### CLAIMS FOR RELIEF

-First Claim for Relief-
Violations of the Federal Fair Debt Collection Practices Act

Plaintiff repeats, realleges, and incorporates by reference paragraphs 1 through 31.

32. The foregoing acts and omissions of Defendant and its employees/agents constitute numerous and several violations of the FDCPA, including, but not limited to, 15 U.S.C. §§ 1692d generally, 1692d(2), 1692e generally, 1692e(4), 1692e(5), 1692e(7), 1692e(10), 1692f generally, 1692f(1), and 1692f(6).

33. As a result of the above violations of the FDCPA, Plaintiff is entitled to a declaratory judgment that Defendant's conduct violated the FDCPA, and recovery for actual damages, statutory damages, and attorney's fees and costs.

-Second Claim for Relief-
Violations of the Florida Consumer Collection Practices Act

Plaintiff repeats, realleges, and incorporates by reference paragraphs 1 through 31.

34. The foregoing acts and omissions of Defendant and its employees/agents constitute violations of the FCCPA, including, but not limited to, Fla. Stat. §§ 559.72(7) and 559.72(9).

35. As a result of Defendant's violation of the FCCPA, Plaintiff is entitled to a declaratory judgment that Defendant's conduct violated the FCCPA, and recovery for actual damages, statutory damages, punitive damages, and attorney's fees and costs.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Honorable Court enter judgment against Defendant for the following:

a. Equitable relief in the form of a Declaratory Judgment that Defendant's acts constituted violations of the FDCPA and FCCPA, pursuant to F.S.A. § 559.77(2);

b. Actual damages, pursuant to 15 U.S.C. § 1692k(a)(1) and F.S.A. § 559.77(2);

c. Statutory damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A) and F.S.A. § 559.77(2);

d. Punitive damages, pursuant to F.S.A. § 559.77(2);

e. Costs and reasonable attorney's fees, pursuant to 15 U.S.C. § 1692k(a)(3) and F.S.A. § 559.77(2); and

f. Such other and further relief as this Court may deem just and proper.

Respectfully submitted,

/s/ Joseph B. Battaglia
G. Donald Golden, Fla. Bar No.: 0137080
don@brandonlawyer.com
David S. Bromley, Fla. Bar No.: 0155349
david@brandonlawyer.com
Joseph B. Battaglia, Fla. Bar No. 0058199
joe@brandonlawyer.com
THE GOLDEN LAW GROUP

        808 Oakfield Drive, Suite A  
        Brandon, Florida 33511  
        Telephone:  (813) 413-8700  
        Facsimile:   (813) 413-8701  
        Attorneys for Plaintiff

## DEMAND FOR JURY TRIAL

PLEASE TAKE NOTICE that Plaintiff demands trial by jury in this action.

        /s/ Joseph B. Battaglia  
        Joseph B. Battaglia, Fla. Bar No. 0058199